IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **LILLIE M. WILLIAMS** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **CASE NO. 5:13-CV-57** |
| **vs.** ) | |
| ) | |
| **UPSON COUNTY** ) | |
| **Defendant.** ) | |
| ) | |
| ) | |
| ) | |

_____

## MEMORANDUM OF LAW IN OPPOSITION FOR SUMMARY JUDGMENT

**COMES NOW** LILLIE M. WILLIAMS (hereinafter "Ms. Williams"), Plaintiff in the above-styled case and files this, her Brief in Opposition for Summary Judgment showing the Court as follows:

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for

summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. Id. at 248. A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. Id.

## FACTUAL BACKGROUND

Ms. Williams incorporates every single additional statement of fact as if stated herein. Additionally, Ms. Williams incorporates every single fact supporting the denial in response to Defendant's statement of facts.

## CITATION AND ARGUMENT OF AUTHORITY

### I.    MS. WILLIAMS WORKED FOR UPSON COUNTY.

Upson County's argument that Ms. Williams did not work for the county for 26 years is frivolous and insulting. Upson County asked the late Honorable Wilbur D. Owens Jr. of the Middle District of Georgia for permission to promote Ms. Williams to Captain. [Exhibit H p. 1].

Upson County wrote a letter to the EEOC claiming that the correct name of the party is "Upson County Board of Commissioners." [Exhibit C p.

4]. The letter states that the Sheriff's Office is a department funded by Upson County. [Exhibit C p. 4]. The letter goes on to say that a total of 190 people work for Upson County, and 79 of the 190 work in the Sheriff's Department.

Ms. Williams received unemployment benefits from Upson County when she was illegally terminated from Upson County. [Exhibit F pp. 8-9] [Williams Decl. ¶ 3]. The unemployment office calculated that Ms. Williams received a salary in the amount of $48, 309.25 from October 1, 2011 through September 30, 2012 from Upson County. [Exhibit F p. 9] [Williams Decl. ¶ 4]. Ms. Williams also receives retirement benefits from Upson County. [Exhibit F p 20] [Exhibit G pp. 1-6] [Williams Decl. ¶ 4]. Ms. Williams currently receives retirement payments in the amount of $732.96. [Exhibit G p. 1].

Upson County is her employer because she received a salary from Upson County. Furthermore, she receives retirement benefits from Upson County. See Llampallas v. Mini-Circuits, Lab, 163 F.3d 1236, 1243  (11th 1998) (We believe, however, that only individuals who receive compensation from an employer can be deemed "employees" under the statute). Additionally, the Sheriff's Office is not a legal entity. See Dean v.

Barber, 951 F.2d 1210, 1214 (11th Cir. 1992); and Lawal V. Fowler, 196 Fed. Appx. 768, 768 (11th Cir. 2006)

## II. MS. WILLIAMS EXHAUSTED HER ADMINISTRATIVE REMEDIES.

Ms. Williams filed a claim for sex, age, and racial discrimination with the EEOC on May 6, 2011. [Exhibit E p. 38] [Doc. 29 p. 459]. Ms. Williams filed a claim for sex, age, race, and retaliation with the EEOC on May 20, 2013. [Exhibit F p. 18] [Doc. 29 p. 461]. Upson County's argument is without merit.

## III. MS. WILLIAMS'S CLAIM FOR AGE DISCRIMINATION IS PROPERLY BEFORE THE COURT.

Ms. Williams filed a claim for age, race, and sex discrimination with the EEOC on May 6, 2011. [Doc. 29 p. 459]. Ms. Williams filed a second charge with the EEOC on May 20, 2013. [Doc. 29 p. 461]. Ms. Williams made these fillings without an attorney. Ms. Williams filed her second amended complaint on December 29, 2013. [Doc. 22-1]. Most importantly, the letters Ms. Williams sent the EEOC clearly shows she is complaining about age, race, and sex discrimination. [Exhibits B p. 17-33, E p. 1-9, E p. 12-18, E p. 20, E p. 44-50, F p. 3-4, F 10-16, G p. 23-30, H p. 9-15, and I p. 1-10].

Ms. Williams's second amended complaint gave Upson County Notice of her age discrimination claim. The statement of facts from paragraphs 1 through 9 was incorporated in her claim. Including the fact, she was terminated and replaced by someone younger than 40 years of age. This is a fact not a conclusory statement. Upson County has hired people younger than 40. [Kilgore Exhibit 1 pp. 10-11] [Doc. 22-1 p. 4]. The facts in the complaint are related to both charges filed with the EEOC. See Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (The facts alleged in her EEOC charge of race and gender discrimination could have reasonably been extended to encompass a claim for retaliation); see also Wu v. Thomas 863 F.2d 1543, 1547 (11th Cir. 1989) (As long as allegations in the judicial complaint and proof are reasonably related to charges in the administrative filing and no material differences between them exist, the court will entertain them. . . . Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate."). Ms. Williams's claim for age discrimination is properly before the court.

## IV.    AGE DISCRIMINATION.

The ADEA prohibits employers from discharging an employee who is at least 40 years of age because of that employee's age. See 29 U.S.C. §§

623 (a) (1), 631(a). In <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 176 (2009), the Supreme Court held that the language "because of" in the ADEA statute means that a plaintiff must prove that discrimination was the "but-for" cause of the adverse employment action. <u>See</u> Id. Following <u>Gross</u>, the Eleventh Circuit continued to evaluate ADEA claims based on circumstantial evidence under the <u>McDonnell Douglas</u> framework. See <u>Kragor v. Takeda Pharm. Am., Inc.</u>, 702 F.3d 1304, 1308 (11th Cir. 2012).

Upson County terminated Ms. Williams's employment telling her she was no longer needed. [Kilgore Exhibit 2] [Kilgore Dep. at 14:24-15:25, December 11, 2013]. Upson County told the Georgia Department of Labor Ms. Williams is terminated because she was an at-will employee, and her services were no longer needed. [Kilgore Exhibit 4 p. 1] [Kilgore Dep. at 25:3-23, December 11, 2013]. Upson County eliminated Ms. Williams's position. [Kilgore Dep. at 68:1-16, December 11, 2013]. Therefore, her age discrimination case should be examined under the reduction-in-force "RIF" frame work.

In a RIF case in which a position is eliminated in its entirety, the plaintiff may seek to establish a prima facie case of discrimination by demonstrating "(1) that he was in a protected class and was adversely

affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate in reaching that decision." Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1344 (11th Cir. 2003).

### 1. Ms. Williams is a member of the protected age group, and she was adversely affected by an employment decision.

Ms. Williams is older than 40 years of age. Therefore, she is a member of the protected age group. Ms. Williams was adversely affected by Upson County's decision to release her because her services were no longer needed. [Kilgore Exhibits 2, 3, and 4]. She was adversely affected when her position within the county was eliminated. [Kilgore Dep. at 68:1-16, December 11, 2013].

### 2. Ms. Williams was qualified for her current position or another position.

Ms. Williams was qualified for her position as captain. Upson County asked the late Honorable Wilbur D. Owens Jr. of the Middle District of Georgia for permission to promote Ms. Williams as captain. [Exhibit H p. 1] [Doc. 29 p. 427] [Doc. 29 p. 418].  Ms. Williams held this position for 17 years. Ms. Williams has never been written-up for misconduct. [Kilgore's

140    Exhibit 1 p. 17]. Most importantly, Upson County does not have a job

141    description for Ms. Williams's position. [Kilgore Dep. at 85:25-86:16,

142    December 11, 2013] Upson County can't argue she's not qualified for a job

143    that has no description.

144         Upson County posted job openings for other positions within the

145    Sheriff's Department. [Exhibit A pp. 94, 95, 96, and 98]. Ms. Williams was

146    qualified for these open positions.

147    **3. There is evidence Upson County intended to discriminate on**
148         **the basis of age in reaching the decision.**
149

150         To satisfy the third requirement, "the evidence must lead the

151    factfinder reasonably to conclude either (1) that defendant consciously

152    refused to consider retaining a plaintiff because of his age, or (2) defendant

153    regarded age as a negative factor in such consideration." Allison v. Western

154    Union Telegraph Co., 680 F.2d 1318 (C.A. 11 (Ga.), 1982) (internal

155    citations omitted).

156         There is evidence of age discrimination because Kilgore did not want

157    Ms. Williams to apply for other full time jobs in the Sheriff's Office. Kilgore

158    wanted younger people in full time positions. Upson County claims there are

159    no job descriptions for full time employees. [Exhibit J pp. 6-8]. Kilgore

160 testifies there are no job descriptions for employees in the Sheriff's Office.

161 [Kilgore Dep. at 85:25-86:16, December 11, 2013]. However, Upson County

162 turned over documents showing reference to job descriptions.

163     Upson County was asked to turn over documents showing job

164 openings to the public. [Exhibit J p. 8-9]. Upson County turned over five

165 documents. [Exhibit A pp. 94-98]. Each document clearly states "job

166 descriptions" in the Sheriff's Office. [Exhibit A pp. 94-98]. Four of the

167 documents were typed up on July 3, 2013. The documents state a person has

168 to apply by July 17, 2013. [Exhibit A pp. 94-98]. Kilgore does not know

169 who typed up the documents. Kilgore does not know if all of the job

170 postings were placed in the newspaper. [Kilgore Dep. at 66:4-66:22,

171 December 11, 2013]. The job openings were placed in a newspaper for one

172 day, July 17, 2013. The deadline for applying for the job was the same day,

173 July 17, 2013. [Exhibit A pp. 94-98]. Kilgore does not know which

174 newspaper the ad was placed in. [Kilgore Dep. at 67:5-14, December 11,

175 2013] [Kilgore Exhibit 8].

176     Upson County hired a total of eight jail officers. Only one person was

177 40 years old or older. [Kilgore Exhibit 1 pp. 10-11]. Upson County hired one

178 Sheriff Deputy. The person was younger than 40. [Kilgore Exhibit 1 pp. 10-

11]. Upson County hired a total of three part time crossing guards. [Exhibit A p. 98]. All three crossing guards were over the age of 40. [Kilgore Exhibit 1 pp. 10-11]. The duties of the crossing guard is to direct traffic around the schools two times a day. [Kilgore Dep. at 93:16-20, December 11, 2013].

Ms. Williams did not apply for any job position because she did not know they were available. [Williams Decl. ¶ 11]. The only time Ms. Williams knew a job opening was available is when Kilgore told her an opening was available. Kilgore has hired people in the past without posting ads in the paper. Kilgore admits that not all openings are advertised in the paper. [Kilgore Dep. at 66:4-66:22, December 11, 2013]. Ms. Williams is not required to prove she applied for the jobs. The Eleventh Circuit explains:

> Accordingly, a plaintiff makes out a prima facie case—that is, he creates a presumption of discrimination and forces the employer to articulate legitimate reasons for his rejection - - as long as he establishes that the company had some reason or duty to consider him for the post. The employer cannot avoid a Title VII violation by showing that it incorrectly assumed that the plaintiff was uninterested in the job. When the plaintiff had no notice of or opportunity to apply for the job such a reason for rejection is legally insufficient and illegitimate.

Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (1984). The Eleventh Circuit further explains:

> However, where an employer does not formally announce a position, but rather uses informal and subjective procedures to

identify a candidate, a plaintiff need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post.

Vessels v. Atlanta Independent School System, 408 F.3d 763, 768 (Fed. 11th Cir. 2005) (internal citation omitted).

A reasonable factfinder can conclude that Kilgore did not consider retaining Ms. Williams because of her age. At the time of her firing, he did not tell her there were job openings. Upson County has no formal job posting system. Kilgore posted the job openings for one day in the newspaper. The deadline to apply was the same day. [Kilgore Exhibit 8]. Kilgore himself does not know which newspaper the jobs were posted in.

A reasonable factfinder can conclude Kilgore regarded age as a negative factor in such consideration because everyone he has hired is under the age of 40.

Lastly, a reasonable factfinder can conclude Kilgore's decision was motived by age discrimination because he was the harasser, and he took the adverse action of firing Ms. Williams. Ms. Williams complained about age discrimination because of Peacock and Kilgore. [Exhibit E p. 38] [Exhibits B p. 17-33, E p. 1-9, E p. 12-18, E p. 20, E p. 44-50, F p. 3-4, F 10-16, G p. 23-30, H p. 9-15, and I p. 1-10]. The Eleventh Circuit has explained:

> We assume that the harasser, because she harbors a discriminatory animus towards the plaintiff, could not act as an objective, non-discriminatory decision maker with respect to the plaintiff. Thus, any time the harasser makes a tangible employment decision that adversely affects the plaintiff, an inference arises that there is a causal link between the harasser's discriminatory animus and the employment decision.

Llampallas v. Mini-Circuits, Lab, 163 F.3d 1236, 1247 (11th 1998).

Clearly Upson County discriminated against Ms. Williams because of her age. "But for" her age, Ms. Williams job position would not have been eliminated, or she would have been considered for other positions.

### 4. There are triable issues of fact for Ms. Williams age discrimination claim.

The Eleventh Circuit has made it clear a plaintiff can prove age discrimination without the McDonald Douglas framework. The Eleventh Circuit states, ". . . This framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case." Sims v. MVM, Inc., 704 F.3d 1327, 1333 (2013). The Court goes on and explains:

> Instead, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker.

253   <u>Id.</u> at 1333 (citations omitted). Ms. Williams incorporates here argument

254   below that there are triable issues of fact for her age discrimination case.

255   ## V.   RACE AND SEX DISCRIMINATION.

256   Title VII prohibits employers from discriminating "against any

257   individual with respect to his compensation, terms, conditions, or privileges

258   of employment, because of such individual's race, color, religion, sex, or

259   national origin." 42 U.S.C. § 2000e-2(a) (1). Where there is no direct

260   evidence of discrimination, a Plaintiff may prove discrimination through

261   circumstantial evidence, using the burden-shifting framework established in

262   <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

263   To establish a prima facie case for disparate treatment, Plaintiff must

264   show that "(1) the Plaintiff is a member of a protected class; (2) Plaintiff was

265   subjected to adverse employment action; (3) Plaintiff's employer treated

266   similarly situated employees more favorably; and (4) Plaintiff was qualified

267   to do the job. <u>See</u> <u>EEOC V. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1286

268   (11th Cir. 2000). If Plaintiff satisfies these elements, the Defendant must

269   provide a legitimate, nondiscriminatory reason for their action. <u>See</u> <u>Burke-</u>

270   <u>Fowler v. Orange County, Fla.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006).

271   **1.  Ms. Williams is a member of two protected classes.**

Ms. Williams is an African-American woman. She is a member of two protected classes.

**2. Ms. Williams was subjected to an adverse employment action.**

The Supreme Court has defined an adverse employment action as follows: "A tangible employment action constitutes significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998). The Eleventh Circuit as held:

> We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

Davis v. Town of Lake Park Florida, 245 F.3d 1232, 1239 (11th Cir. 2001). "Whether an action is sufficient to constitute an adverse employment action must be determined on a case by case basis." Gupta v. Fla. Bd. Of Regents, 212 F.3d 571, 587 11th Cir. 2000). "We use an objective test, asking whether a reasonable person in [the plaintiff's] position would view the employment

action in question as adverse." <u>Hinson v. Clinch Cty. Ga Bd. Edu,</u> 231 F.3d 821,829 (11th Cir., 2000).

### a) Ms. Williams being fired on January 25th, 2013 is an adverse action.

Kilgore terminated Ms. Williams's employment on January 25th, 2013. [Kilgore Exhibit 2, Kilgore Exhibit 3, and Kilgore Exhibit 4]. Being fired from a job is an adverse action.

### b) Ms. Williams did not receive training for sex crimes is an adverse action.

Ms. Williams is a certified police officer. It's her job to enforce the law. Ms. Williams performed sex-offender registry duties. [Williams Dep. at 166:6-172:12, January 8, 2014]. The laws concerning sex offenders changed. [Williams Dep. at 164:15-17, January 8, 2014]. Ms. Williams needed to receive training on the new sex-offender laws. [Williams Dep. at 228:6-11, January 8, 2014]. Mr. Williams told Upson County that the training was necessary; however, Upson County refused her the training. [Williams Dep. at 228:12-229:7, January 8, 2014].     Not receiving the proper training to perform her job duty is a material change in the terms, conditions, or privileges of her employment.

316  The material purpose of a police officer is to enforce the law. <u>See</u>

317  O.C.G.A. 17-4-20. A police officer cannot perform this material purpose if

318  the officer is not given training on the law.

319  **c)  Ms. Williams not being able to supervise people under her**
320  **rank is an adverse action.**
321

322  Ms. Williams was promoted to captain along with Ralp Seacry.

323  [Exhibit H p. 1]. Ms. Williams and Seacry received the same pay of $20.770

324  per hour as all the other captains. [Exhibit B pp. 10, 11, and 14]. Ms.

325  Williams could not get other employees to help her because she did not have

326  the authority to supervise. Kilgore told her she did not have authority over

327  other employees.

328  Taking away Ms. Williams ability to supervise takes away the

329  prestige and responsibility of the position. It's the equivalent of a demotion.

330  Ms. Williams is the only captain who does not have the responsibility to

331  supervise other employees. Kilgore told Ms. Williams, she was a captain in

332  name only. A reasonable factfinder can conclude that a captain not having

333  authority to supervise is an adverse action.

334  **d)  Ms. Williams not being given proper equipment is an adverse**
335  **action.**
336

Ms. Williams was not given a radio along with all the other

employees. Ms. Williams's material duty was to handle sex offenders. Ms.

Williams would have to get out of her car to check the living condition of

the sex offender. Ms. Williams was afraid for her safety because she did not

have a radio. Ms. Williams was concerned that she would not be able to

radio for help. [Williams Decl. ¶ 11] [Exhibit G p. 25-26].

### 3.  Upson County treated similarly situated employees more favorably.

A comparator is an employee "similarly situated [to the Plaintiff] in

all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091

(11th Cir. 2004).

All the Captains are similar situated to Ms. Williams. All of the

captains have the same rank and pay. [Exhibit B pp. 10, 11, and 14]. Ms.

Williams is the only African-American woman. All the employees who are

post certified received a radio but Ms. Williams. These employees are

similarly situated.

### 4.  Ms. Williams was qualified to do the job.

Ms. Williams was qualified for her position as captain. Upson County

asked the late Honorable Wilbur D. Owens Jr. of the Middle District of

Georgia for permission to promote Ms. Williams as captain. [Exhibit H p. 1] [Doc. 29 p. 427] [Doc. 29 p. 418].  Ms. Williams held this position for 17 years. Ms. Williams has never been written-up for misconduct. [Kilgore's Exhibit 1 p. 17]. Most importantly, Upson County does not have a job description for Ms. Williams's position. [Kilgore Dep. at 85:25-86:16, December 11, 2013]. Upson County can't argue she's not qualified for a job that has no description.

### 5. There are triable issues of fact for Ms. Williams's sex and race claims.

Ms. Williams reincorporate her argument below that there are triable issues of facts for her race and sex claims as if stated herein.

## VI.   RETALIATION

Title VII prohibits an employer from retaliating against an employee "because [the Plaintiff] has opposed any practice made unlawful employment practice . . . or because [the Plaintiff] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation

between the two events. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2410-16, 165 L.Ed.2d 345 (2006).

**1. Ms. Williams was engaged in statutorily protected expression.**

Ms. Williams was engaged in statutorily protection when she filed two claims with the EEOC. [Exhibit E p. 38] [Doc. 29 p. 459] [Exhibit F p. 18] [Doc. 29 p. 461].

**2. Ms. Williams suffered an adverse employment action.**

The United States Supreme Court has concluded "that Title VII's substantive provision and its antiretaliaiton provision are not coterminous." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 67 (2006). The Supreme Court has defined a materially adverse action as one that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68.  Ms. Williams reincorporates her arguments under section two of her race and sex claim outlining the adverse action she suffered from Upson County as if stated herein.

Ms. Williams reincorporate her argument for adverse action in her age, race and sex discrimination claims as if stated herein.

### 3.  There is some causal relation between the two events.

To establish the causal connection element, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting Simmons v. Camden County Bd. of Educ., 757 f.2d 1187, 1189 (11th Cir. 1985)). In order to show the two things were not entirely unrelated, the Plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action. See Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993); and Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997).

Kilgore took office in January 1, 2013. During sometime in January of 2013, Kilgore called Ms. Williams into his office and asked her what her intentions were. Kilgore asked Ms. Williams what she was going to do about the EEOC claim she had filed. Ms. Williams told him she was going to drop it. Kilgore then told her to go home and change uniforms, so she could be sworn in as an officer.  [Williams Dep. at 274:22-275:20 , January 8, 2014] [Exhibit B pp. 1-2].

Later in the month, Kilgore called Ms. Williams into his office and handed her a letter stating her services were no longer needed. [Kilgore

Exhibit 2]. Kilgore testifies that he did not tell Ms. Williams, she was being fired for gross negligence. [Kilgore Dep. at 17:11-18:9, December 11, 2013] [Kilgore Dep. at 20:7-21, December 11, 2013].

The general rule is that close temporal proximity between the employees's protected conduct, and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. See Gupta F. Fla. Bd. Of Regents, 212 F.ed 571, 590 (11th Cir. 2000); and Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 934 (11th Cir. 1995).

Ms. Williams had a right to file a claim with the EEOC because of age, race, and sex discrimination. [Exhibit E p. 38]. The close proximate Ms. Williams is focusing on is not the filing date of the EEOC claim, but the date Kilgore questions her about the claim. See Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1278 (11th Cir. 2008).

Furthermore, Kilgore was the harasser Ms. Williams complain about to the EEOC. [Exhibits B p. 17-33, E p. 1-9, E p. 12-18, E p. 20, E p. 44-50, F p. 3-4, F 10-16, G p. 23-30, H p. 9-15, and I p. 1-10]. It is the general rule the harasser cannot make an objective decision. Llampallas, 163 F.3d at 1247. This is also supported by the fact the envelope with the password to

the safe was open when Ms. Williams received her file from Upson

County's Attorney's Office. Kilgore did not investigate these facts.

[Williams Dep. at 241:7-10, January 8th, 2014] [Exhibit K p. 11¶ 1] [Exhibit

K p. 16 ¶ 3] [Williams Decl. ¶ 9].

### 4. Ms. Williams would not have been terminated but for Upson County's retaliating against her.

Ms. Williams had never been written-up while working for Upson

County for 26 years. [Kilgore Dep. 90:13-16, December 11, 2013] [Kilgore

Exhibit 1 p. 17]. Ms. Williams had no control over someone taking the

combination out of her personnel file. [Williams Dep. at 241:7-10, January

8th, 2014] [Exhibit K p. 11¶ 1] [Exhibit K p. 16 ¶ 3] [Williams Decl. ¶ 9]. A

reasonable factfinder can conclude Ms. Williams would not have been fired

but for Upson County's discriminatory reason.

### 5. There are triable issues of fact for Ms. Williams retaliation claim.

Ms. Williams reincorporate her argument below that there are triable

issues of facts for her retaliation claim as if stated herein.

## VII. UPSON COUNTY'S ACTIONS ARE PRETEXT.

Pretext means that the reasons given by the employer were not the real reasons for the adverse employment decision. See Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006). A Plaintiff may demonstrate pretext "by revealing such weakness, implausibility's, inconsistencies, incoherencies or contradictions in [the Defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1348 (11th Cir. 2007). "Evidence of pretext may include . . . the same evidence offered initially to establish the prima facie case." Wilson, 376 F.3d at 1088. Upson's County's explanations are pretext for the following reasons:

### a) Upson County has given prior inconsistent statements explaining why Ms. Williams's employment is terminated.

Pretext may also be established by proof of inconsistent statements or shifting explanations for the adverse employment decision, suggesting that the articulated reasons are recently fabricated or false. See Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926, 935 (11th Cir. 1995); Howard v. BP Oil Co., Inc., 32 F.3d 520m 526 (11th Cir. 1994); and Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1194 (11th Cir. 2004) (inconsistent

478  rationale for termination allowed jury to question credibility and once

479  credibility is damaged, a rational jury could infer discrimination).

480       Upson County terminated Ms. Williams claiming she was an at-will

481  employee, and her services were no longer needed. . [Kilgore Exhibit 4 p. 1]

482  [Kilgore Dep. at 25:3-23, December 11, 2013]. Upson County told the

483  Georgia Department of Labor Ms. Williams is terminated because her

484  services were no longer needed. [Kilgore Exhibits 2, 3, and 4]. Upson

485  County reduced its work force by eliminating Ms. Williams's position.

486       Two years later, Upson County argues Ms. Williams is terminated for

487  gross negligence. Such contradiction is pretext. Furthermore, Kilgore's

488  testimony has been impeached. Kilgore testified that there are no job

489  descriptions in his office. However, the newspaper article submitted by

490  Kilgore informed the public there are job descriptions in his office. A

491  reasonable factfinder can conclude Kilgore is a liar.

492  **b) Upson County's explanation for terminating Ms. Williams is**
493  **weak.**
494

495       Upson County terminated Ms. Williams claiming she was gross

496  negligence in her job performance. However, Upson County has not stated

497  any facts to support such false conclusory statement. Ms. Williams told

498  Kilgore the combination to the safe was kept in her personnel file. Upson

County has not submitted any facts or affidavits disagreeing with Ms. Williams's statement.

Ms. Williams's personnel file was not in her office for over a year. Her personnel file was being kept by Upson County's Attorney's Office. Upson County took her personnel file out of her office when she filed a claim with the EEOC. [Exhibit K p. 8 ¶ 4] [Williams Dep. at 241:7-10, January 8th, 2014] [Exhibit K p. 11¶ 1] [Exhibit K p. 16 ¶ 3] [Williams Decl. ¶ 9]. Upson County has not submitted any facts or affidavits disagreeing with this fact.

Ms. Williams testified the envelope with the combination was open when she received her personnel file back from Upson County's Attorney's Office. [Williams Dep. at 241:7-10, January 8th, 2014] [Exhibit K p. 11¶ 1] [Exhibit K p. 16 ¶ 3] [Williams Decl. ¶ 9].

Captain Searcy believes Ms. Williams was the type of employee who was dedicated, did not like errors, and that liked her work to be thorough. [Exhibit K p. 11 ¶ 4]. Upson County has not submitted any facts or affidavits to disagree with Ms. Williams. A reasonable factfinder can conclude Upson County's motive to terminated Ms. Williams was not gross negligence.

**c)  Upson County's suspect business practice is pretext.**

Upson County's business practice of only placing a job ad in a newspaper for one day, and requiring a person to apply on the same day is pretext. Furthermore, Upson County's practice of not have a job description is pretext. Not having a job description makes it hard for a person to claim discrimination. A reasonable factfinder could find that such practice is motivated by discrimination.

### d) Upson County's past discrimination is proof of pretext.

It has long been the case that background evidence and evidence of other acts of discrimination may have a particularly relevant role in proving discrimination. In <u>McDonnell Douglas Corp. v. Green</u>, the Court made it clear that past practices with respect to minority employment may be a necessary part of proving discrimination. See <u>McDonnell Douglas Corp.</u>, 411 U.S. at 805; <u>Estes v. Dick Smith Ford, Inc.</u>, 856 F.2d 1097, 1103 (8th Cir. 1988); <u>Ruiz v. Posada de San Juan Assoc.</u>, 124 F.3d 243, 249 (1st Cir. 1997); <u>Sprint/United Mgmt. Co. v. Mendelsohn</u>, 552 U.S. 379, 387 (2008); and <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261, 1285-86 (11th Cir. 2008).

Upson County has a history of discriminating against minorities and women. For twenty-two years, Upson County had to obtain approval from

537  the court because of its discriminatory practices of hiring minorities and

538  women. See Bentley, et al v. City of Thomaston, et al, 5:79-cv-00235-WDO.

539  [Exhibit H]. Such information is relevant to the case sub judice.

540  **e)  Upson County has not offered any nondiscriminatory reason**
541      **why Ms. Williams could not supervise employees.**
542

543      Upson County has not given any nondiscriminatory reason why Ms.

544  Williams was not allowed to supervise other employees like the other

545  captions. Therefore, Ms. Williams does not have to prove pretext.

546  **f)  Upson County has not offered any nondiscriminatory reason**
547      **why Ms. Williams could not have a radio.**
548

549      Upson County has not given any nondiscriminatory reason why Ms.

550  Williams was not given a radio along with the other employees. Therefore,

551  Ms. Williams does not have to prove pretext.

552  **VIII.  THERE ARE TRIABLE ISSUES OF FACTS**
553          **SUPPORTING MS. WILLIAMS, AGE, RACE, AND SEX**
554          **CLAIMS.**
555

556      "A triable issue of fact exists if the record, viewed in the light most

557  favorable to the plaintiff, presents enough circumstantial evidence to raise a

558  reasonable inference of intentional discrimination. If the plaintiff presents

559  enough circumstantial evidence to raise a reasonable inference of intentional

560  discrimination, her claim will survive summary judgment." Hamilton v.

Southland Cristian Scho. Inc., 680 F.3d 1316, 1320 (11th Cir. 2012). The

McDonnell Douglas prima facie case method was "never intended to be

rigid, mechanized, or ritualistic." United States Postal Serv. Bd. Of

Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 75 L.Ed. 2d 403

(1983). "It is merely a procedural device to facilitate an orderly focused

evaluation of the evidence "as it bears on the critical question of

discrimination." Id.

It must be understood, "if a plaintiff fails to show the existence of a

similarly situated employee, summary judgment is appropriate where no

other evidence of discrimination is present." Holifield v. Reno, 115 F.3d

1555, 1562, (11th Cir. 1997); See also, Wilson v. B/E Aerospace, Inc., 376

F.3d 1079, 1092 (11th Cir. 1997) ([Plaintiff's] failure to identify a

comparator does not end the analysis of her termination claim, however);

and Lee v. Mid-State Land & Timber Co., Inc., 285 Fed. Appx. 601, 607

(11th Cir. 2008) (unpublished) (if a plaintiff fails to show the existence of a

similarly situated employee, summary judgment is appropriate where no

other evidence of discrimination is present).

**a) There are triable issues of fact for Ms. Williams's age, race, and sex discrimination claims.**

Upson County has not offered a nondiscriminatory reason why Ms. Williams could not supervise other employees although she has the rank of captain. Her inability to supervise other employees caused her to be overburden with work.  [Exhibits B p. 17-33, E p. 1-9, E p. 12-18, E p. 20, E p. 44-50, F p. 3-4, F 10-16, G p. 23-30, H p. 9-15, and I p. 1-10]. No other employees helped Ms. Williams with these duties. [Dawson 12:7-12, February 4, 14] [Dawson Exhibit 1]. Kilgore had no idea what Ms. Williams duties were. [Kilgore Dep. at 101:9-102:2, December 11, 2013]. Although Kilgore had no idea what Ms. Williams duties were; he accused her of "whining" about her job. [Exhibit K p. 7 ¶ 3]. Ms. Williams was able to supervise employees in the past. [Exhibit B p. 20 ¶ 2]. There is no reason why she couldn't supervise employees as a captain. A reasonable fact-finder can conclude Ms. Williams was being mistreated because of her race, age, and sex.

Upson County has not offered a nondiscriminatory reason why Ms. Williams was not given a radio to use while handling sex register cases. Ms. Williams had the duty of checking on sex offenders. Ms. Williams was concerned about her safety while out checking on sex offenders. [Williams

Decl. ¶ 10] [Exhibit G p. 25-26]. A reasonable fact-finder can conclude Ms. Williams was being mistreated because of her race, age, and sex.

No explanation is given for why Ms. Williams could not attend training classes for sex register cases. Upson County's reasons for not having a job description doesn't make business sense. A reasonable factfinder can believe that Upson County was discriminating against Ms. Williams.

Upson County claims Ms. Williams is terminated for negligence. However, Upson County has given inconsistent reasons for why Ms. Williams is terminated. Furthermore, the statements by Kilgore to GBI suggest discrimination is the real reason why she is fired. Kilgore told GBI Ms. Williams filed a claim with the EEOC office. Kilgore tells GBI Ms. Williams is complaining about her work load. [Exhibit K p. 7 ¶ 3] [Exhibit K p. 8 ¶ 2]. These statements from Kilgore had nothing to do with investigating the alleged theft.

Furthermore, Kilgore terminated Ms. Williams's employment without further investigating the alleged theft. Kilgore knew Ms. Williams's personnel file was no longer in her office. Upson County's attorney's office had Ms. Williams's personnel file. Ms. Williams informs Kilgore the

618  envelope with the combination to the safe was open. [Williams Dep. at

619  241:7-10, January 8th, 2014] [Exhibit K p. 11¶ 1] [Exhibit K p. 16 ¶ 3]

620  [Williams Decl. ¶ 9].Kilgore has not given any reason why Ms. Williams is

621  not speaking truthfully. Kilgore claims he cares about Ms. Williams and her

622  family. Before this incident, Kilgore admits Ms. Williams is an honest

623  person. [Kilgore Dep. at 72:6-8, December 11th, 2013] Kilgore's actions are

624  not consistent with a person who cares about Ms. Williams. A reasonable

625  factfinder can believe Upson County's motive for terminating Ms. Williams

626  is not for negligence.

627       Additionally, Kilgore called Ms. Williams into his office within days

628  of becoming sheriff. Kilgore asked Ms. Williams what her intentions were

629  concerning her EEOC claim. Kilgore fires Ms. Williams within weeks of

630  asking her about the EEOC claim. [Exhibit G p. 1] [Williams Decl. ¶ 5]

631  [Williams Dep. at 275:10-13, January 8th, 2014] A reasonable factfinder can

632  conclude that Upson County's motive for terminating Ms. Williams is

633  motivated by discrimination.

634       Lastly, Upson County fired Ms. Williams and eliminated her position.

635  [Kilgore Dep. at 68:1-16, December 11, 2013]. Upson County placed job

636  openings in a newspaper for one day. [Kilgore Exhibit 8].Ms. Williams did

not apply for these positions because she was unaware of them. [Williams Decl. ¶ 11]. There are triable issues that need to be tried by a jury in this case.

## **<u>CONCLUSION</u>**

For the reasons stated above, there are genuine issues of material fact and the Court should deny Defendant's motion for summary judgment.

Respectfully submitted this Thursday, May 08, 2014

<u>s/ Michael O. Mondy</u>
Michael O. Mondy, Esq.
Georgia Bar No. 897950
Attorney for Plaintiff

**MICHAEL O. MONDY, P.C.**
925B Peachtree Street NE #329
Atlanta, Georgia 30309
Office: 404.492.9568
Facsimile: 404.492.7074
mondy@mondypc.com

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |
|---|---|
| **LILLIE M. WILLIAMS** | ) |
|  | ) |
|  | ) |
| **Plaintiff,** | )  **CASE NO. 5:13-CV-57** |
| **vs.** | ) |
|  | ) |
| **UPSON COUNTY** | ) |
| **Defendant.** | ) |
|  | ) |
|  | ) |
|  | ) |

_____

## <u>CERTIFICATE OF FONT, TYPE, AND SERVICE</u>

I hereby certify that on May 8, 2014, I electronically filed with the

Clerk of Court the Plaintiff Memorandum of Law in Opposition for

Summary Judgment, in Times New Roman, 14 point type, using the

CM/ECF system which will automatically send e-mail notification to all

attorneys of record.

Respectfully submitted this Thursday, May 08, 2014

<u>s/ Michael O. Mondy</u>
Michael O. Mondy, Esq.
Georgia Bar No. 897950
Attorney for Plaintiff

**MICHAEL O. MONDY, P.C.**
925B Peachtree Street NE #329
Atlanta, Georgia 30309

Office: 404.492.9568
Facsimile: 404.492.7074
mondy@mondypc.com