**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

LILLIE M. WILLIAMS,

    Plaintiff,

v.

UPSON COUNTY,

    Defendant.

CASE NOS.: 5:13-CV-57 (LJA)

## ORDER

Before the Court is Defendant Upson County's Motion for Summary Judgment (Doc. 26). For the reasons explained below, Defendant's Motion (Doc. 26) is **GRANTED**.

## BACKGROUND

This action arises out of the termination of Plaintiff Lillie Williams, a sixty-two-year-old African-American female, from the Upson County Sheriff's Office (the "UCSO") on January 25, 2013.[1] Plaintiff began working with the UCSO in October 1988. (Doc. 27 at ¶ 33.) During all relevant times, Plaintiff served as one of five captains of the UCSO. (*Id.* at ¶¶ 34-35.) Prior to March 2011, her duties primarily consisted of maintaining and reconciling the UCSO petty cash and narcotics fund; processing requests for record expungements; and maintaining the sex-offender registry. (*Id.* at ¶¶ 39-45.)

Following the resignation of a UCSO employee in March 2011, Sheriff Don Peacock and Chief Deputy Dan Kilgore reassigned duties among the remaining employees. Plaintiff was moved from maintaining the sex-offender registry to the warrants division, and her duty

---

[1] The relevant facts are derived from the Second Amended Complaint (Doc. 22), Defendant's Answer to the Second Amended Complaint (Doc. 24), Defendant's Statement of Undisputed Facts (Doc. 27), Plaintiff's Response to Defendant's Statement of Material Facts (Doc. 33), Plaintiff's Statement of Additional Facts (Doc. 34), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

to maintain the sex-offender registry was assigned to another employee. (*Id.* at ¶¶ 46, 48.) In response to the reassignment, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") against the UCSO, asserting claims of race, age, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA") on June 1, 2011. (*Id.* at ¶ 74.) Plaintiff alleged that in late 2010, she requested but was denied help with her large work assignments and that two-part-time employees were hired in January and February 2011 to help a younger white male captain. Plaintiff further alleged that being assigned to the warrants division was discriminatory. (*Id.* at ¶ 75.)

On January 25, 2013, Sheriff Kilgore[2] requested that Plaintiff withdraw $100.00 from the petty cash and narcotics fund for a drug operation. (*Id.* at ¶ 77.) When Plaintiff went to retrieve the requested funds from the safe in her office, she discovered that the safe was open and that all of the money in the safe was missing. (*Id.* at ¶¶ 78, 80.) Plaintiff calculated the total amount of missing money to be $2,915.41. (*Id.* at ¶ 83.) When Plaintiff informed Sherriff Kilgore of the missing money, Sheriff Kilgore instructed her to provide a written statement explaining the circumstances surrounding the missing money. (*Id.* at 84; *see also* Doc. 32-14 at 7.) After providing Sheriff Kilgore with her statement, Sheriff Kilgore and another captain met with Plaintiff to inform her that her employment with the USCO was terminated, effective immediately. (Doc. 27 at ¶¶ 85-87.) Sheriff Kilgore provided Plaintiff with a termination notice, and Plaintiff left the UCSO that same day. (*Id.* at ¶ 88.) Although the termination notice did not specify the reason for her termination, Plaintiff understood the reason to be because of the missing money. (Doc. 29 at 245:21-25.)

Following Plaintiff's termination, Sheriff Kilgore neither advertised nor filled Plaintiff's position. (Doc. 27 at ¶ 100.) Instead, due to budgetary constraints, Sheriff Kilgore assigned Plaintiff's duties to two other current employees. (*Id.* at ¶¶ 101-03.) This work was assigned in addition to the work for which the two employees were already responsible. (*Id.* at ¶¶ 106-07, 116.)

---

[2] Dan Kilgore served as Chief Deputy from October 14, 1991 until January 1, 2013, and was sworn in as Sheriff on January 1, 2013.

On February 13, 2013, Plaintiff, acting *pro se*, commenced this action against Don Peacock and Dan Kilgore, alleging discrimination on the basis of her race, sex, and age. (Doc. 1.) Plaintiff subsequently obtained counsel and amended her complaint, asserting claims against only Defendant Upson County. (Doc. 9.) Plaintiff amended her complaint a second time, suing Defendant Upson Count and alleging that during her employment as a captain with the UCSO, she was subjected to discrimination based on her race, gender and age in violation of Title VII, the ADEA, and 42 U.S.C. § 1981 ("Section 1981" or "§ 1981"). (Doc. 22.) Plaintiff also alleged that her employment with the UCSO was terminated in retaliation for filing the June 2011 administrative charge of discrimination with the EEOC in violation of Title VII. (*Id.*)

On April 14, 2014, Defendant moved for summary judgment on the following grounds: (1) Plaintiff's Section 1981 claim should be dismissed because Defendant is a state actor; (2) Defendant is not amenable to suit for the actions of the Upson County Sheriff or his employees; (3) Plaintiff has failed to establish a *prima facie* case of race, gender, or age discrimination; (4) Plaintiff has failed to establish pretext; (5) Plaintiff has failed to exhaust her administrative remedies and establish but-for causation with respect to her ADEA claim; (6) Plaintiff has failed to establish a *prima facie* case and but for causation with respect to her claim of retaliation; and (7) Plaintiff is not entitled to punitive damages. (*See* Doc. 26.)

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the

3

claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quotation omitted). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

# DISCUSSION

## I. Section 1981 Claim

Defendant is entitled to summary judgment on Plaintiff's § 1981 claim because Upson County is a state actor and thus not subject to suit under § 1981. Although § 1981 "encompass private as well as governmental action," *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 388 (1982), when a plaintiff seeks to bring a § 1981 claim against a state actor, § 1983 is the only permissible avenue. *Butts v. Cnty. of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000)("§ 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981"). Because Upson County is a state actor and because Plaintiff did not bring her claims pursuant to § 1983, Plaintiff's § 1981 claim against Upson County must be dismissed. *See Halliburton v. Peach Cnty. Sheriff's Dep't*, No. 5:11-CV-109, 2012 WL 4468764, at *4 (M.D. Ga. Sept. 26, 2012) ("Because Peach County is a state actor, [plaintiff's] § 1981 claim against Peach County is inappropriate.").

Even if Plaintiff had brought her § 1981 claim pursuant to § 1983, Defendant would still be entitled to summary judgment. "The Eleventh Circuit has rejected the notion that a Georgia county can be liable under § 1983 for the actions of members of a sheriff's office, finding that, pursuant to the Georgia Constitution, a sheriff's office is independent from the county in which it operates." *Townsend v. Coffee Cnty., Ga.*, 854 F. Supp. 2d 1345, 1350 (S.D. Ga. 2011)(citing *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1332, 1335 (11th Cir. 2003)). In *Grech*, the court found that "[i]n contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function." 335 F.3d at 1336. In addition, counties "have no role in the training or supervision of the sheriff's deputies. Instead, sheriffs exercise authority over their deputies independent from the county. Sheriffs alone hire and fire their deputies." *Id.* (citations omitted). Therefore, because a county "does not, and cannot, direct the Sheriff how to arrest a criminal, how to hire, train, supervise, or discipline his deputies, what polices to adopt, or how to operate his office," the county "has no § 1983 liability for the acts and policies of the sheriff and his employees." *Id.* at 1347-48.

Furthermore, Plaintiff has effectively abandoned her § 1981 claim by failing to respond to Defendant's Motion. *See Rd. Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler*

*Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (finding that the trial court properly "treat[ed] as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"). Accordingly, Defendant's Motion is **GRANTED** with respect to Plaintiff's § 1981 claim.

## II.  Title VII and ADEA Claims

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Likewise, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). Only an employer may be sued under Title VII and the ADEA. 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C.A. § 623(a)(1); *see also Jordan v. Conway*, 441 F. App'x 761, 764 (11th Cir. 2011) ("Title VII and the ADEA authorize suits against an employer."). The determination of whether a person or entity constitutes an employer for purposes of Title VII and the ADEA is based on the scope of control the person or entity exercises over the employment relationship. *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1345 (11th Cir. 1999). Although a person or entity's status as an employer is a matter of federal law, state law may inform the analysis of the employment relationship. *Jordan*, 441 F. App'x at 764 (citing *Calderon v. Martin Cnty.*, 639 F.2d 271, 273 (5th Cir. 1981)).

As explained above, under Georgia law, a sheriff's office is independent from the county in which it serves, and "[s]heriffs alone hire and fire their deputies." *Grech*, F.3d at 1336; *see also Manders v. Lee*, 338 F.3d 1304, 1311 (11th Cir. 2003) ("Sheriffs alone hire and fire their deputies. Deputies . . . are employees of the sheriff and not the county.") (internal citation omitted). As stated by the Eleventh Circuit in *Manders*, "[i]n contrast to the State's authority and control over sheriffs, Georgia's Constitution grants counties no legislative power or authority over sheriffs and expressly prevents counties from controlling or affecting the sheriff's office or the personnel thereof." 338 F.3d at 1310. The Georgia Supreme Court has likewise explained that sheriffs are subject to the control of the Georgia

legislature and are not county employees. *Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 396 S.E.2d 903, 903 (1990) ("The sheriff . . . is an elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission."); *see also Chaffin v. Calhoun*, 415 S.E.2d 906, 907 (1992). Therefore, Defendant was not Plaintiff's "employer" for purposes of Title VII and the ADEA, and thus cannot be held liable for the alleged discriminatory acts of the Sheriff or his deputies. *See Jordan*, 441 F. App'x at 764 (finding that "[t]he district court was correct that [plaintiff] could not assert his ADEA and Title VII claims against Gwinnett County, because those statutes authorize suit against an employer, and [plaintiff] was employed by the Sheriff's Department, which, under Georgia law, is a separate entity from the County").

Accordingly, Defendant's Motion is **GRANTED** with respect to Plaintiff's Title VII and ADEA claims. Because the Court finds that Defendant cannot be held liable for the acts of the Sheriff and his deputies and because Plaintiff has named no other defendants, the Court need not address the underlying merits of Plaintiff's claims of discrimination.

## CONCLUSION

In light of the forgoing, Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED**. It is hereby **ORDERED** and **ADJUDGED** that Plaintiff shall take nothing by her Second Amended Complaint (Doc. 22), and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this 22nd day of July, 2015.

                                               /s/ Leslie J. Abrams
                                          **LESLIE J. ABRAMS, JUDGE**
                                          **UNITED STATES DISTRICT COURT**